J. S21024/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAMELA ATKINSON, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1138 WDA 2016 |

Appeal from the PCRA Order July 11, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002704-2012

BEFORE: LAZARUS, J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                                    **FILED MAY 24, 2017**

Appellant, Pamela Atkinson, appeals from the July 11, 2016 Order entered in the Court of Common Pleas of Erie County denying her first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm on the basis of the PCRA court's June 15, 2016 Opinion, which accompanied the court's Notice of Intent to Dismiss Without a Hearing Pursuant to Pa.R.Crim.P. 907.[1]

The relevant facts, as summarized by this Court in a prior appeal, are as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The PCRA court incorporated the June 15, 2016 Opinion in its September 6, 2016 1925(a) Opinion by reference.

Following a grand jury investigation into the distribution of OxyContin [OC] and other controlled substances in Erie County, Pennsylvania, Agent Alan McGill of the Office of Attorney General, Bureau of Narcotics Investigation and Drug Control learned that Appellant was involved in a drug distribution ring. Affidavit of Probable Cause, 6/18/12. Utilizing a confidential informant named Ryan Fatica, Officer McGill conducted controlled purchases of OxyContin [OC] from an individual name[d] Denise McConnell on July 7, 2010. *Id.*; N.T., 9/24/13, at 35–42. Ms. McConnell was thereafter arrested and informed the police that Appellant and a woman known only as "Viola" were her drug suppliers and that Appellant transported the drugs from New York to Erie approximately once a month. Affidavit of Probable Cause, 6/18/12. An investigation into Appellant's medical records revealed that over several years, Appellant had received numerous OxyContin [OC] prescriptions, with a value of approximately seventy thousand ($70,000.00) dollars, from a New York City physician. *Id.*

***Commonwealth v. Atkinson***, No. 193 WDA 2014, unpublished memorandum at 1 (Pa. Super. filed January 5, 2015).

On September 27, 2013, a jury convicted Appellant of Corrupt Organizations, Criminal Conspiracy, three counts of Possession of a Controlled Substance with Intent to Deliver, and Criminal Use of a Communication Facility.[2] On December 16, 2013, the court sentenced Appellant to an aggregate term of 48 to 124 months' incarceration. Appellant filed a direct appeal and on January 5, 2015, this Court affirmed her Judgment of Sentence. *Id.*

---

[2] 18 Pa.C.S. § 911(b)(3); 18 Pa.C.S. § 903; 35 P.S. § 780-113(a)(30); and 18 Pa.C.S. § 7512(a), respectively.

On January 5, 2016, Appellant filed the instant timely *pro se* PCRA Petition, later amended by appointed counsel, alleging, *inter alia*, ineffective assistance of trial counsel.[3]

After providing Notice to Appellant pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed Appellant's Petition without a hearing on July 11, 2016. Appellant filed a timely Notice of Appeal.

Appellant presents the following issues for our review:

1. The PCRA court erred in denying [Appellant]'s PCRA Petition and/or conducting a hearing to take testimony where she argued that her trial counsel was ineffective in failing to subpoena records that would have shown that she did not have access to the drugs in question, and that the verdict in her case would have been "not guilty" as to all counts, had these records been produced.

2. The PCRA court erred in denying [Appellant]'s PCRA Petition and/or conducting a hearing to take testimony where she argued that her trial counsel was ineffective in failing to object to the Attorney General's evidence from a "distribution entity" for several pharmacies, when the evidence was not properly authenticated, and that the verdict in her case would have been "not guilty" as to all counts, had these records been produced.

Appellant's Brief at 2 (some capitalization omitted).

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its Order is otherwise

---

[3] January 5, 2016, is the date of the postmark on the envelope Appellant used to mail her Petition. Pursuant to the prisoner-mailbox rule, we consider January 5, 2016, to be the date Appellant filed this Petition. *See* ***Commonwealth v. Fransen***, 986 A.2d 154, 155 n.5 (Pa. Super. 2009).

free of legal error. ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. ***Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). There is no right to a PCRA hearing; a hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008).

In the instant case, Appellant avers that trial counsel was ineffective for failing to obtain records from Purdue Pharma Patients Assistance Program ("Purdue") to support Appellant's testimony that she began receiving a reformulated version of OxyContin, OxyContin OP, in April 2010, thereby exonerating her from possessing the OxyContin OC pills introduced as evidence at trial. Appellant's Brief at 2. Appellant also avers that trial counsel was ineffective for failing to object to the introduction of evidence of a database printout from the National Drug Code Directory, which

contradicted Appellant's testimony and demonstrated that the reformulated version, OxyContin OP, was not available until August 2010. *Id*. at 6. These claims lack merit.

The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. *Id*. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and [] (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

The Honorable John Garhart, sitting as the PCRA court, has authored a comprehensive and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's ineffectiveness claims. The record supports the PCRA court's findings and its Order is otherwise free of legal error. We affirm on the basis of the PCRA court's July 15, 2016 Opinion, which concluded that the underlying claims are without merit because: (1) defense counsel **did** introduce select paperwork from Purdue and additional,

unidentified paperwork would not have been exculpatory because Purdue only manufactures OxyContin; (2) Appellant's prescription records from Express Scripts, the pharmacy that actually distributed the medication to Appellant, reflected that Appellant had been prescribed the older version, OxyContin OC, in June, July, and August 2010; and (3) Appellant's claim regarding evidence from a "distribution entity" for several pharmacies had been raised and rejected on direct appeal. ***See*** Notice of Intent to Dismiss Without a Hearing Pursuant to Pa.R.CrimP. 907, 6/15/16, at 3-5.

The parties are instructed to attach a copy of the PCRA court's June 15, 2016 Opinion to all future filings.

Order affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2017

COMMONWEALTH OF PENNSYLVANIA    :    IN THE COURT OF COMMON PLEAS

                         :    OF ERIE COUNTY, PENNSYLVANIA

           V.                :    CRIMINAL DIVISION

                         :

PAMELA ATKINSON           :    No. 2704-2012

## NOTICE OF INTENT TO DISMISS WITHOUT A HEARING PURSUANT TO PA.R.CRIM.P. 907

AND NOW, this __15__ day of June, 2016, upon consideration of Petitioner's *pro se* PCRA petition, a counseled supplemental PCRA petition filed by Tina M. Fryling, Esq., and after conducting an independent review of the record, this Court has determined that there are no genuine issues concerning any material fact, Petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceeding. Accordingly, this Court notifies Petitioner that it intends to dismiss his *pro se* PCRA petition and supplemental PCRA petition without a hearing. Petitioner shall have twenty (20) days to file and serve objections to this Notice.

### I.    Background of the case

Petitioner was convicted of corrupt organizations, conspiracy, three counts of possession of a controlled substance with intent to deliver, and criminal use of communication facility.[1] The relevant facts, as summarized by the Honorable Superior Court in a prior appeal, are as follows:

> Following a grand jury investigation into the distribution of OxyContin and other controlled substances in Erie County, Pennsylvania, Agent Alan McGill of the Office of Attorney General, Bureau of Narcotics Investigation and Drug Control learned that [Petitioner] was involved in a drug distribution ring. Affidavit of Probable Cause, 6/18/12. Utilizing a confidential informant named Ryan Fatica, Officer McGill conducted controlled purchases of OxyContin from an individual name[d] Denise McConnell on July 7, 2010. *Id;* N.T., 9/24/13, at 35-42. Ms. McConnell was thereafter arrested and informed the police that [Petitioner] and a woman known only as "Viola" were her drug suppliers and that [Petitioner] transported the drugs from New York to Erie approximately once a month. Affidavit of Probable Cause, 6/18/12. An investigation into [Petitioner's] medical records revealed that over several years, [Petitioner] had received numerous

---

[1] 18 Pa.C.S.A. §§ 911 (b)(3), 903, 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 7512(a), respectively.

1

OxyContin prescriptions, with a value of approximately seventy thousand ($70,000.00) dollars, from a New York City physician. *Id.* [Petitioner] was subsequently arrested and charged with the aforementioned crimes.

*Commonwealth v. Atkinson*, 193 WDA 2014, at *1-2 (Pa. Super., January 5, 2015).

On September 27, 2013, following a four-day jury trial before the Honorable Shad Connelly, Petitioner was found guilty of the foregoing offenses. On December 16, 2013, Petitioner appeared before Judge Connelly and was sentenced to an aggregate term of 48 to 124 months' imprisonment. Petitioner filed a direct appeal and on January 5, 2015, the Superior Court affirmed her judgment of sentence.

On January 5, 2016, Petitioner filed the instant PCRA petition.[2] This Court appointed PCRA counsel, who filed a supplemental PCRA petition. In the supplemental PCRA petition, Petitioner alleges the following: (1) trial counsel was ineffective in failing to subpoena records from Purdue Parma Patients Assistance Program that would have shown she did not have access to the drugs confiscated in July 2010; (2) trial counsel was ineffective in failing to object to the Attorney General's evidence from a "distribution entity" for several pharmacies, when the evidence was not properly authenticated; and, (3) if trial counsel had obtained the records and/or had the evidence regarding the distribution entity not been presented to the jury, the jury would have found her not guilty. As discussed *infra*, these claims are meritless.

## II.    Discussion

A PCRA petitioner will be granted relief when he proves, by a preponderance of evidence, that his sentence resulted from one of the circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). These circumstances include a violation of the Pennsylvania or United States

---

[2] Pursuant to the prisoner mailbox rule, Petitioner's *pro se* PCRA filing was filed on January 5, 2016, the date she placed it in the hands of prison authorities for mailing (i.e. postmark date). *See, Commonwealth v. Fransen*, 986 A.2d 154, 156 n.5 (Pa. Super. 2009); *Commonwealth v. Castro*, 766 A.2d 1283 (Pa. Super. 2001); *Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. 1998).

2

Constitution or ineffective assistance of counsel which, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543 (a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Spotz,* 84 A.3d 294, 311 (Pa. 2014)(citations omitted). To prove ineffectiveness, a petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) petition suffered actual prejudice as a result. *Id.*

Here, Petitioner's ineffective assistance of counsel claim related to the records from Purdue Pharma Patients Assistance Program ("Purdue Program")[3] is meritless. At trial, defense counsel introduced during Petitioner's testimony her application and other paperwork from the Purdue Program. N.T. Trial (Day 3), 09/26/13, at 47-51. Despite Petitioner's assertion to the contrary, any other records from the Purdue Program, not specifically identified in her PCRA petitions, would not have offered any exculpatory value to her case. The evidence at trial reflected that OxyContin is manufactured by Purdue Pharmaceutical Company. N.T. Trial (Day 2), 09/25/13, at 205. Petitioner actually obtained her OxyContin through a Missouri pharmacy, Express Scripts Specialty Distributors, who forwarded her the drugs. *Id.* at 139. Petitioner's prescription records from Express Scripts, the pharmacy that provided her with the OxyContin, reflected that she was prescribed OxyContin CR (the original OC formulation) in June, July, and August 2010. N.T. Trial (Day 3), 09/26/13, at 140-142; Commonwealth's Exhibits 8A – 8C. OxyContin in quantities of 300 units were dispensed to Petitioner on 14 different occasions between 2009 and 2011. N.T. Trial (Day 2), 09/25/13, at 135-139. The earliest that Petitioner

---

[3] The Purdue Program assists qualified individuals in obtaining medications at low/no cost.

received a prescription for Ops (the new formulation) would have been in September 23, 2010. *Id.*, at 142; Commonwealth's Exhibit 8D.

Based on the above, along with witness testimony related to Petitioner's sale of OxyContin in July 2010, evidence established that Petitioner was guilty of the offenses. Accordingly, the claim is meritless and, moreover, Petitioner suffered no prejudice as to the omission of the records.

Regarding evidence from a "distribution entity" for several pharmacies, a similar claim was raised and rejected on direct appeal. On direct appeal, Petitioner alleged, *inter alia*, the trial court erred in permitting the Commonwealth to introduce evidence of a database printout from the National Drug Code Directory. The Superior Court found no error and in support, determined the following:

> The database printout was offered to rebut [Petitioner's] testimony that in April of 2010, Purdue Pharmaceutical Company (the manufacturer of OxyContin) ceased providing her with OxyContinOC", the version of Oxycontin she had previously been receiving. N.T., 9/26/13, at 58-62. Instead, [Petitioner] claimed that after April 2010, she began to receive a new version of OxyContin labeled "OxycontinOP" which was gel-like in form and could not be crushed or dissolved and therefore could not be abused, unlike the prior "OC" formulation. *Id.* By asserting that she last received "OxyContin OC" in April 2010, [Petitioner] sought to demonstrate that she could not have been involved in the July 7, 2010 controlled buy involving Ms. McConnell and Mr. Fatica, in which police officers recovered 49 "OxyContin OC" pills.
>
> To rebut [Petitioner's] testimony that she no longer received any "OxyContinOC" pills after April 2010, the Commonwealth introduced the testimony of Agent Christopher Parker of the Erie County Office of the Attorney General Diversion Investigative Unit, who testified, based on a printout from the "National Drug Code Directory" website -- which is generated by the United States Food and Drug Administration (FDA) -- that "OxycontinOP" only became available for distribution on August 8, 2010. N.T., 9/26/13, at 133-140. [Petitioner] argues that the trial court erred in permitting the Commonwealth to introduce under the business records exception the information from the FDA's online "National Drug Code Directory" because Agent Parker was not qualified to testify as to the business practices of the FDA and whether the FDA prepared and

4

maintained the National Drug Code Directory in the regular course of its business. Appellant's Brief at 54-58.

We conclude that even if the Commonwealth failed to lay an adequate foundation for the introduction of the National Drug Code Directory printout as a business record, the trial court could have properly taken judicial notice of the FDA's National Drug Code Directory as a source "whose accuracy cannot reasonably be questioned." *See* Pa.R.E., Rule 201(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); 34 FR 11157 (July 1, 1969) ("The Secretary of Health, Education, and Welfare . . .has directed the Commissioner of Food and Drugs to establish a National Drug Code System. The National Drug Code System will provide an identification system in computer language to permit automated processing of drug data by Government agencies, drug manufacturers and distributors, hospitals and insurance companies. The system has been developed with Government-industry agreement and will consist of a nine-character National Drug Code (NDC)"); 36 FR 27; 21 U.S.C.A. § 360 (Registration of producers of drugs or devices). Accordingly, [Petitioner's] evidentiary challenge fails.

*Commonwealth v. Atkinson*, 193 WDA 2014, at *13-15 (Pa. Super., January 5, 2015).

Based on the above, Petitioner's assertion that the Commonwealth failed to properly authenticate the challenged evidence, and trial counsel's failure to object to the evidence, is meritless.

## III.  Conclusion

Based upon the foregoing, this Court finds that Petitioner has failed to raise any meritorious claims and is not entitled to PCRA relief. Accordingly, this Court notifies Petitioner that it intends to dismiss her *pro se* PCRA petition and supplemental PCRA petition without a hearing. Petitioner shall have twenty (20) days to file and serve objections, if any, to this Notice.

BY THE COURT:

John Garhart, Judge
_____
John Garhart, Judge