J-A06019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PATRICK JACKSON | |
| Appellee | No. 2470 EDA 2012 |

Appeal from the Order July 19, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-001427-2009

BEFORE:  BENDER, P.J.E., PANELLA, J. and LAZARUS, J.

MEMORANDUM BY PANELLA, J.                **FILED SEPTEMBER 12, 2014**

The Commonwealth appeals from the order entered on July 19, 2012, in the Court of Common Pleas of Philadelphia County, which granted Appellee's petition brought pursuant to the Post-Conviction Relief Act (PCRA)[1] and reinstated his post-sentence and appellate rights. After careful review, we affirm.

On October 23, 2009, at approximately 9:35 P.M., Officer Linell Jefferson and his partner, Officer Grimes, of the City of Philadelphia Police Department executed a traffic stop of Jackson's vehicle for driving without headlights. While obtaining Jackson's license and registration information, Officer Jefferson noticed a bulge on Jackson's right hip and observed what

_____

[1] 42 PA.CONS.STAT.ANN. §§ 9541-9546.

appeared to be a holster. As a safety precaution, the officers ordered Jackson out of the vehicle and, in the course of conducting a pat-down, recovered from his waist a .25 caliber handgun containing four live rounds of ammunition. Jackson was unable to produce a license for the firearm. Jackson was subsequently arrested. The officers later confirmed that Jackson lacked a license to carry the handgun. Indeed, Jackson's prior conviction for robbery, a first-degree felony, among other offenses, made him ineligible to carry a firearm.

Defense counsel Nina Carter, Esquire, of the Philadelphia Defender Association, filed an omnibus pre-trial motion to suppress on behalf of Jackson. Jackson's motion to suppress was denied following a hearing. Immediately thereafter, Johnson entered open guilty pleas to two violations of the Uniform Firearms Act, 18 PA.CONS.STAT.ANN. § 6105, Persons not to possess, use, manufacture, control, sell or transfer firearms, and 18 PA.CONS.STAT.ANN. § 6106, Firearms not to be carried without a license.

Jackson, represented by Attorney Carter, appeared for sentencing on May 6, 2010. At the time of sentencing, the trial court reviewed Jackson's background, which included an extensive criminal record involving guns and drugs, and sentenced him to a term of 4 to 8 years' imprisonment for possessing a firearm in violation of section 6105 and to a concurrent term of 3½ to 7 years for carrying a firearm without a license in violation of section 6106. **See** N.T., Sentencing, 5/6/10, at 1-8. Attorney Carter advised

Jackson, on the record, of his appellate rights. Specifically, Attorney Carter

stated:

> **MS. CARTER**: You have ten days from today's date to ask the Judge to reconsider his sentence. And you have thirty days from today to file for an appeal to Superior Court for a new trial.
>
> If you wish to do either, it must be done in writing. And if you fail to act within those timelines, you would be considered to have waived or lost those rights.
>
> Do you understand your sentence as well as your appellate rights?
>
> **THE DEFENDANT**: Yes

*Id*., at 8.

Even though Jackson acknowledged his appellate rights, he failed to

file either a post-sentence motion or a direct appeal within the prescribed

time period. On October 5, 2010, Jackson filed a *pro se* PCRA petition. John

Cotter, Esquire, was appointed to serve as PCRA counsel and filed an

amended PCRA petition on December 20, 2011. The amended PCRA petition

alleged that

> trial defense counsel was ineffective because he [sic] failed to file an appeal from the judgment of sentence…when requested to do so by [Jacksonn]. As a result of this [Jackson] lost is [sic] state constitutional right to appeal the judgment of sentence… [Jackson] is entitled to reinstatement of his appeal rights from the judgment of sentence imposed in this matter.

Amended Petition Under Post-Conviction Relief Act, 12/20/11, at ¶4(a). As

part of the prayer for relief, Jackson's amended PCRA petition made the

"add-on" request that the trial court reinstate his right to file post-sentence motions. *Id*., at 2.

At the PCRA hearing on July 19, 2012, Jackson testified via video conferencing that "during the trial [Attorney Carter] said they automatically put it in, my appeal rights." N.T., PCRA Hearing, 7/19/12, at 7-8. Jackson further acknowledged that the earliest correspondence he forwarded to the Defender's Association was September, 11, 2010, over four months after sentencing and advisement of his appellate rights. *See id*., at 11. It did appear however, that Jackson forwarded correspondence to the trial court on August 31, 2010 which the trial court did not read, but was just time-stamped and placed in Jackson's file. *See id*., at 12.

Testimony was also elicited from Jackson's trial counsel, Attorney Carter. According to Attorney Carter, Jackson did not request that she file post-sentence motions or a direct appeal on his behalf at any time following sentencing. *See id*., at 25-27. The Defender's Association file contains no correspondence or telephone messages from Jackson between May 6, 2010, the date of sentencing and 30 days thereafter. *See id*., at 26. More importantly, Attorney Carter testified that it is neither her personal practice nor the practice of the Defender's Association to tell clients that post-sentence motions or appeal will be filed automatically on their behalf. *See id*., at 29-30.

At conclusion of the hearing the PCRA court made the following findings on the record:

Okay. After I heard all the evidence and had a sidebar conversation with counsel, I find without a doubt that Ms. Carter was certainly not ineffective. She was assigned to my courtroom routinely for gun court cases. She was always very prepared, very effective and that's why I asked the question about the record because she routinely always advised her client's their appellate rights on the record. She did that without fail. She also actively represented defendants in front of me from guilty pleas to waiver trials to, of course, doing a plethora of motions before me all the time. So she's very competent. She's excellent at what she does. I find she certainly was not ineffective.

What I will say is that the defendant sending me some letter in August which I, of course, do not read any letters that come from any defendants at all for obvious reasons, but that letter at that point was him wanting to do something different. I agree with the Commonwealth, of course, at that time he did waive any rights that he would have had, and that there was a series of letters, not to me, that I see her that's in the packet to the Defender's Association and it was him just trying to get some things reinstated.

I will reinstate his right to appeal. I'll do that, but it certainly is not based on ineffective assistance of counsel. I'm only doing that because he did not know what he was doing in terms of sending a letter to me, the Court, in August … three months later when he should have filed the requisite paperwork at that time which he did not do and didn't do because he never contacted the Defender's Association to try to let them know what he wanted to do and I will surmise it was because Ms. Carter adequately represented him  but also advised him of what his rights would have been. So over the Commonwealth's objection, I am going to reinstate his appellate rights, but it's certainly not based on any ineffective assistance claims which she certainly wasn't ineffective. He just didn't know what he was doing.

*Id*., at 32-34.

PCRA counsel then requested that the trial court "also reinstate the right to file post-sentence motions so [counsel] has some issues to raise on appeal." *Id*., at 34. The Commonwealth objected. Jackson's PCRA counsel countered that "this was a guilty plea" so "in order to raise anything on

appeal, [he] would have to file post-sentence motions." *Id*., at 35. The trial court agreed with Jackson's position and ordered that *both* Jackson's post-sentence rights as well as his right to appeal be reinstated. *Id*., at 36. Counsel for Jackson subsequently filed post-sentence motions on July 23, 2012, which were promptly denied. This appeal followed.

On appeal, the Commonwealth raises the following issue for our review:

> Did the lower court err where it granted defendant the right to file post-sentence motions nunc pro tunc despite the absence of any allegation or proof of actual prejudice?

Commonwealth's Brief, at 1.

In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. *See Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). We pay great deference to the findings of the PCRA court, but its legal determinations are subject to our plenary review. *See id*.

Here, the Commonwealth argues that the trial court erred in reinstating Jackson's post-sentence rights. We disagree. In *Commonwealth v. Liston*, 977 A.2d 1089 (Pa. 2009), our Supreme Court expressly disapproved of automatically conferring upon a petitioner the right to file a post-sentence motion *nunc pro tunc* once the PCRA court orders reinstatement of direct appeal rights *nunc pro tunc*. *See id*., at 1094. Rather, in order to grant such relief, a PCRA petitioner must plead and prove

that he requested such relief with the PCRA court. ***See Commonwealth v. Fransen***, 986 A.2d 154, 155 (Pa. Super. 2009). Further, the PCRA court must conduct an evidentiary hearing on the issue to determine whether the deprivation of the right to file and litigate a post-sentence motion was the result of the ineffectiveness of counsel. ***See id***.

Here, the PCRA court did not violate **Liston** by *automatically* reinstating Jackson's post-sentence motion rights simply because it reinstated his direct appeal rights *nunc pro tunc*. Rather, Jackson properly pled a claim for such relief. Liberally construed, Jackson's *pro se* and amended PCRA petitions request the reinstatement of his post-sentence motion rights. In his *pro se* PCRA petition Jackson indicated the relief he sought as "[r]econsideration of sentence, probation, etc." *Pro Se* PCRA Petition, 9/27/10, at 5. Moreover, in his amended PCRA petition Jackson averred that "as a result of [counsel's ineffectiveness] [he] lost [h]is state constitutional right to appeal the judgment of sentence"; and, as such, requested that the PCRA court reinstate his right to file post-sentence motions. Amended PCRA petition, 12/20/11, at ¶4a.

The PCRA court only reinstated Jackson's post-sentence motion rights following an evidentiary hearing as it agreed with Jackson's argument that because he pled guilty the issues he sought to raise on appeal would be waived unless he were afforded the opportunity to assert those claims in a post-sentence motion. **See** N.T., PCRA Hearing, 7/19/12, at 21, 35-36.

Jackson's argument was legally sound,[2] and provided an acceptable basis for the PCRA court's decision to reinstate his post-sentence motion rights.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2014

---

[2] **See Commonwealth v. Bromley**, 862 A.2d 598, 603 (Pa. Super. 2004 ("It is well settled that an [a]ppellant's challenge to the discretionary aspects of his sentence is waived if the [a]ppellant has not filed a post-sentence motion challenging the discretionary aspects with the sentencing court.") (citaitons omitted).